IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


STATE INDUSTRIAL PRODUCTS CORPORATION                    PLAINTIFF


VS.                          CIVIL ACTION NO.3:07-cv-77-WHB-LRA


BETA TECHNOLOGY, INC.                                    DEFENDANT


## OPINION AND ORDER

This cause is before the Court on the Motion of Defendant to Exclude Plaintiff's Damages Model and Lay Testimony of Brian Limbert ("Motion to Exclude").  The Court, having considered the Motion, Response, Rebuttal, Sur-rebuttal, attachments to the pleadings, as well as supporting and opposing authorities finds that the Motion, to the extent it seek to prevent Brian Limbert from offering testimony as a lay witness regarding lost profits is well taken and should be granted.  The Court will grant Plaintiff leave of Court to designate Brian Limbert as an expert witness in this case, will grant Defendant leave of Court to designate an expert witness to rebut Brian Limbert's opinions regarding lost profits, and will grant the parties additional time in which to depose any expert witness designated pursuant to this Opinion and Order.

The Court additionally finds that the Motion, to the extent it seeks to exclude Brian Limbert's opinions and Damages Model on the basis that their underlying methodology is unreliable, should be

denied, and that the Motion, to the extent it seeks to exclude Plaintiff's Damages Model on the basis that it is an impermissible summary under Federal Rule of Evidence 1006, should be denied without prejudice.

## I.  Factual Background and Procedural History

Thomas Gene Hayden ("Hayden") was employed as a sales representative by Plaintiff, State Industrial Products Corporation ("State"), until he voluntarily resigned from that position on October 2, 2001.  During the course of his employment, Hayden entered an employment agreement that prohibited him from using confidential customer information he acquired while working for State for a period of eighteen months.  On December 20, 2001, State filed a lawsuit in this Court against Hayden alleging that he breached the terms of his employment agreement by selling competitive products to his former State customers.  See State Industrial Products Corp. v. Hayden, Civil Action No. 3:01-cv-984- HTW-JCS.  The parties agreed to settle the lawsuit, and on June 27, 2002, United States District Judge Henry T. Wingate entered a Consent Order under which Hayden was barred from using confidential customer information he acquired while employed at State for an eighteen-month period beginning on June 5, 2002.

In June of 2002, Hayden began working as a sales representative for Defendant, Beta Technologies, Inc. ("Beta").  On

September 5, 2002, State filed a motion seeking to hold Hayden in contempt for having allegedly violated the terms of the June 27, 2002, Consent Order by again misusing confidential information regarding State customers.  The parties settled their dispute, and on September 30, 2002, Judge Wingate entered a second Consent Order under which Hayden was again barred from using confidential customer information he acquired while employed at State for an eighteen-month period beginning on September 19, 2002.

State alleges that in June of 2006, it learned that Hayden "with the help and knowledge of his employer Beta" violated the prior Consent Orders entered by Judge Wingate, as well as the settlement agreements and employment agreement entered by Hayden and State.  On July 28, 2006, State filed a second motion for contempt against Hayden.  An evidentiary hearing was held by Judge Wingate who, on December 1, 2006, granted the motion for contempt and ordered discovery on the issue of damages.[1]  During discovery, State deposed Hayden who allegedly testified that (1) he informed Beta of the court orders that prohibited him from using confidential information regarding State customers, and (2) he continued to call on prohibited State customers while employed with Beta.  State also deposed Joel Wahlberg and Leigh Meyers, principals of Beta, who allegedly testified that Beta was aware of

---

[1]  On August 30, 2007, Judge Wingate entered an Order dismissing the second motion for contempt upon notification that Hayden and State had settled their dispute.

3

the prior settlements between State and Hayden.  State alleges that despite this knowledge, Beta did not monitor Hayden's sales or otherwise attempt to insure that he was complying with either the Consent Orders entered by Judge Wingate, or the settlement/employment agreements he entered with State.  State further alleges that Beta, in an attempt to circumvent the subject orders and agreements, directed other employees to solicit purchases from the State customers Hayden was prohibited from contacting.

On February 8, 2007, State filed a Complaint against Beta, and an Amended Complaint was filed on March 1, 2007.  Based on the above referenced allegations, State seeks compensatory and punitive damages on claims of contempt of consent judgment and order; conspiracy to breach contract; tortious interference with business contracts; tortious interference with advantageous economic relations; misappropriation of confidential information; violations of the Mississippi Trade Secret Statute, codified at Mississippi Code Annotated Section 75-26-1, *et seq.*; and spoilation of evidence.  Federal subject matter jurisdiction in this case is predicated on diversity of citizenship.  For the purposes of diversity analysis, State is a corporate citizen of, and has its principal place of business in the State of Ohio.  Beta is a corporate citizen of, and has its principal place of business in the State of Texas.  As the parties are diverse, and as State seeks

damages in an amount greater than $75,000, the Court finds it may properly exercise subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

In addition to answering the Amended Complaint, Beta filed counterclaims of tortious interference with business contracts and employment relationship, and tortious interference with business and/or economic relationships and its prospective advantage, against State. The counterclaims are based, in part, on allegations that State offered Hayden financial incentives and rewards in exchange for favorable testimony against Beta in this lawsuit, and to induce him to terminate his employment with Beta, and resume his employment with State. Beta has now moved to exclude certain testimony at trial.

## II.  Discussion

In support of its damages claims, State proposes to offer lay testimony from its Chief Financial Officer Brian Limbert ("Limbert") on the issue of lost profits. Limbert's testimony is based, in part, on a "Damages Model", that was calculated by reviewing sales invoices that had been subpoenaed from Beta. See Mot. to Exclude, Ex. A (Damages Model). As understood by the Court, State subpoenaed documents, including sales invoices, from Beta. The invoices were then reviewed by a legal assistant for State who determined which sales, as reflected by the invoices,

5

violated either the court orders or settlement/employment agreements entered by Hayden and State.  According to the Damages Model, $831,518 in sales that were made by Hayden while working for Beta directly violated the subject orders/agreements.  Id., Ex. A (Damages Model), at 1.

Once the allegedly violating sales were identified, the information was forwarded to Limbert who calculated the amount of profits lost by State as a result of those sales.  Limbert attributed a 56.1% profit rate to Hayden (even though the company-wide profit rate for State is between 6 and 9%).  See id. Ex. A (Damages Model), at 1; Resp. to Mot. to Exclude, Ex. B (Limbert Aff.), at ¶ 8.  In determining Hayden's profit rate, Limbert began by determining the amount of Hayden's actual sales while he was employed by State.  Limbert then deducted from this amount the compensation, business expenses, payroll taxes, and benefits paid to Hayden, as well as the cost of the products he sold.  See Resp. to Mot. to Exclude, Ex. B (Limbert Aff.), at ¶ 7.  Limbert, however, did not exclude any costs associated with paying executive and accounting salaries, administrative activities, hiring/training new sales associates, or research or development, as he contends these costs are not directly related to Hayden's employment activities with State.  Id. Ex. B (Limbert Aff.), at ¶¶ 7-8.  Based on his calculations, Limbert determined that State had lost profits in the amount of $479,070 secondary to the allegedly violating sales made by Hayden while working for Beta.  See Mot. to Exclude,

6

Ex. A (Damages Model), at 1.

Beta first moves to exclude Limbert's testimony on the basis that it is outside the realm of lay testimony permitted under Rule 701 of the Federal Rules of Evidence.  This Rule provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.  Under this Rule "a lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the [fact finder]." Texas A&M Research Found. v. Magna Trans., Inc., 338 F.3d 394, 403 (5th Cir. 2003).  "In particular, the witness must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts."  Id. (quoting Mississippi Chem. Corp. v. Dresser-Rand Co., 287 F.3d 359, 373 (5th Cir. 2002)).

In the case *sub judice*, the Court finds that Limbert has not been shown to have "personalized knowledge" regarding the facts underlying his opinions on the issue of lost profits. Specifically, Limbert's opinions regarding profit loss are based, in large part, on the sales Hayden made while working for Beta. Limbert did not have personal knowledge regarding these sales. Instead, the record shows that Limbert obtained knowledge regarding

Hayden's sales while working for Beta by reviewing documents produced by Beta during discovery. Thus, in present case, Limbert's lost profits opinions are based on matters that relate to the business affairs of Beta, not State. See e.g. id. (finding that Rule 701 "does not preclude testimony by business owners or officers on matters that relate to their business affairs.") (emphasis added)(citations omitted). Accordingly, the Court finds that Limbert cannot testify as a lay witness on the issue of profit loss in this case, and that the Motion to Exclude his testimony on that basis should be granted.

In its Response to the Motion to Exclude, State requests leave of Court to designate Limbert as an expert witness in the event he is precluded from offering lay testimony regarding lost profits in this case. When determining whether to exclude testimony of an expert who was not timely designated under the Federal Rules of Civil Procedure, the Court considers four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." Hamburger v. State Farm Mut. Auto. Ins. Co., 361 F.3d 875, 883 (5th Cir.2004) (citing Geiserman v. MacDonald, 893 F.2d 787, 791 (5th Cir. 1990)).

As regards the first factor, it appears that State did not designate Limbert as an expert in this case because it believed he

8

could offer lay testimony based on his position as an officer of that company. While its reasoning was flawed, the Court finds State has offered a sufficient explanation for failing to timely designate Limbert as an expert in this case. As regards the second factor, testimony regard profit loss is crucial to support the claims State alleges against Beta in this litigation. As regards the third factor, the Court finds Beta will not be unduly prejudiced by allowing State to designate Limbert as an expert at this time because Beta has known of Limbert's opinions regarding profit loss and the bases for those opinions for several months. Additionally, the Court may grant Beta leave to designate its own expert to rebut Limbert's opinions and testimony. Finally, as regards the fourth factor, the Court finds that a continuance will not be required in this case as there is sufficient time for the parties to designate and depose any late-designated experts before trial.

Having considered each of the <u>Hamburger</u> factors based on the pleadings before it, the Court finds that State should be granted leave to designate Limbert as an expert in this case, and that Beta should be granted leave to designate an expert to rebut Limbert's expert opinions. The Court additionally finds that the parties should be granted additional time in which to depose each expert designated pursuant to this Opinion and Order before trial.

Beta also seeks to strike Limbert's opinions and Damages Model on the basis that they are unreliable. In support of this claim, Beta argues that Limbert did not verify the data underlying his opinions but, instead, relied on determinations made by a State-employed legal assistant. Beta further argues that Limbert's opinions are unreliable because his calculations are based on gross profits as opposed to net profits, and that Hayden's purported profit rate of 56.1% is wholly inaccurate. The Court finds that each of the arguments raised by Beta pertain to the credibility of Limbert's opinions and Damages Model, not their admissibility. Accordingly, the Court finds that Limbert's opinions regarding profit loss and Damages Model should not be excluded as unreliable, but may be challenged through cross examination at trial.

Finally, Beta seeks to exclude the Damages Model prepared by Limbert as an unsupported summary under Federal Rule of Evidence 1006. This Rule provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

FED. RULE EVID. 1006. The United States Court of Appeals for the Fifth Circuit has recognized the "powerful impression which charts can make upon a jury, vesting the charts with an air of credibility independent of the evidence purported to be

summarized." <u>United States v. Hart</u>, 295 F.3d 451, 455 (5th Cir. 2002)(citations omitted).  Accordingly, trial judges "must carefully handle their preparation and use."  <u>Id.</u> (citations omitted).  "Not only must such 'writings, recordings, or photographs' be so 'voluminous' that they 'cannot [be] conveniently examined in court,' as the Rule specifies, but there must be 'supporting evidence [that] has been presented previously to the jury' to establish any assumptions reflected in the summary."  <u>Id.</u> (citations omitted).

In the present case, the Court cannot determine, based on the pleadings before it, whether the documents summarized in Limbert's Damages Model are so voluminous as to warrant application of Rule 1006.  For example, the document labeled "Beta Violations Summary", identifies 29 Beta Invoices, and 21 Beta Commission Reports.  <u>See</u> Mot. to Exclude, Ex. A (Damages Model), 2.  It is uncertain, however, whether the numbers on the Beta Violation Summary represent a single or multiple documents.  As the Court cannot determine the volume of documents represented by the Damages Model, it cannot determine at this time whether State will be permitted to offer a summary of those documents at trial.  In the event State is permitted to introduce the Damages Model as a summary pursuant to Rule 1006, it will be required to lay proper

11

predicate, that is supporting evidence, to establish the authenticity and admissibility of the documents underlying the Damages Model including testimony of the individual(s) who prepared the summary.

### III.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant Beta Technology, Inc., to Exclude Plaintiff's Damages Model and Lay Testimony of Brian Limbert [Docket No. 48] is hereby granted in part and denied in part.

To the extent the Motion seeks to prevent Brian Limbert from offering testimony as a lay witness regarding lost profits, the Motion is hereby granted.  To the extent the Motion seeks to exclude Brian Limbert's Opinions and Damages Model on the basis that their underlying methodology is unreliable, it is hereby denied.  To the extent the Motion seeks to exclude Plaintiff's Damages Model on the basis that it is an impermissible summary under Federal Rule of Evidence 1006, it is hereby denied without prejudice.

IT IS FURTHER ORDERED that Plaintiff is hereby granted ten (10) days from the date of this Opinion and Order to designate Brian Limbert as an expert witness in accordance with Rule 26 of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Defendant is hereby granted twenty (20) days from the date of this Opinion and Order to designate an expert witness in accordance with Rule 26 of the Federal Rules of Civil Procedure to rebut the testimony of Brian Limbert.

IT IS FURTHER ORDERED that the parties are hereby granted thirty (30) days from the date of this Opinion and Order to depose any expert designated pursuant to this Opinion and Order.

SO ORDERED this the 28th day of May, 2008.

s/William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE
