IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

STATE INDUSTRIAL PRODUCTS CORPORATION　　　　　PLAINTIFF/
　　　　　　　　　　　　　　　　　　　　　　　　COUNTER DEFENDANT


VS.　　　　　　　　　　　　　CIVIL ACTION NO. 3:07-cv-77-WHB-LRA


BETA TECHNOLOGY, INC.　　　　　　　　　　　DEFENDANT/
　　　　　　　　　　　　　　　　　　　　　COUNTER PLAINTIFF


## OPINION AND ORDER

This cause is before the Court on motions of the parties for summary judgment.  The Court has considered the Motions, Responses, Rebuttals, attachments to the pleadings, as well as supporting and opposing authorities finds:

The Motion of Defendant for Summary Judgment on the claims alleged by Plaintiff is well taken and should be granted.

The Motion and Supplemental Motion of Plaintiff for Summary Judgment on the counterclaims alleged by Defendant is well taken and should be granted.


## I.  Factual Background and Procedural History

Thomas Gene Hayden ("Hayden") was employed as a sales representative by Plaintiff, State Industrial Products Corporation ("State"), until he voluntarily resigned from that position on October 2, 2001.  During the course of his employment, Hayden entered an employment agreement that prohibited him from using

confidential customer information he acquired while working for State for a period of eighteen months.  On December 20, 2001, State filed a lawsuit in this Court against Hayden alleging that he breached the terms of his employment agreement by selling competitive products to his former State customers.  See <u>State Industrial Products Corp. v. Hayden</u>, Civil Action No. 3:01-cv-984-HTW-JCS.  The parties to that case agreed to settle the lawsuit, and on June 27, 2002, United States District Judge Henry T. Wingate entered a Consent Order under which Hayden was barred from using confidential customer information he acquired while employed at State for an eighteen-month period beginning on June 5, 2002.

In June of 2002, Hayden began working as a sales representative for Defendant, Beta Technologies, Inc. ("Beta").  On September 5, 2002, State filed a motion seeking to hold Hayden in contempt for having allegedly violated the terms of the June 27, 2002, Consent Order by again misusing confidential information regarding State customers.  The parties to that case settled their dispute, and on September 30, 2002, Judge Wingate entered a second Consent Order under which Hayden was again barred from using confidential customer information he acquired while employed at State for an eighteen-month period beginning on September 19, 2002.

State alleges that in June of 2006, it learned that Hayden "with the help and knowledge of his employer Beta" violated the prior Consent Orders entered by Judge Wingate, as well as the

2

settlement agreements and employment agreement entered by Hayden and State. On July 28, 2006, State filed a second motion for contempt against Hayden. An evidentiary hearing was held by Judge Wingate who, on December 1, 2006, granted the motion for contempt and ordered discovery on the issue of damages.[1] During discovery, State deposed Hayden who allegedly testified that (1) he informed Beta of the court orders that prohibited him from using confidential information regarding State customers, and (2) he continued to call on prohibited State customers while employed with Beta. State also deposed Joel Wahlberg and Leigh Meyers, principals of Beta, who allegedly testified that Beta was aware of the prior settlements between State and Hayden. State alleges that despite this knowledge, Beta did not monitor Hayden's sales or otherwise attempt to insure that he was complying with either the Consent Orders entered by Judge Wingate, or the settlement/employment agreements he entered with State. State further alleges that Beta, in an attempt to circumvent the subject orders and agreements, directed other employees to solicit purchases from the State customers Hayden was prohibited from contacting.

On February 8, 2007, State filed a Complaint against Beta, and an Amended Complaint was filed on March 1, 2007. Based on the

---

[1] On August 30, 2007, Judge Wingate entered an Order dismissing the second motion for contempt upon notification that Hayden and State had again settled their dispute.

above referenced allegations, State seeks compensatory and punitive damages on claims of contempt of consent judgment and order; conspiracy to breach contract; tortious interference with business contracts; tortious interference with advantageous economic relations; misappropriation of confidential information; violations of the Mississippi Trade Secret Statute, codified at Mississippi Code Annotated Section 75-26-1, *et seq.*; and spoilation of evidence.  Federal subject matter jurisdiction in this case is predicated on diversity of citizenship.  For the purposes of diversity analysis, State is a corporate citizen of, and has its principal place of business in the State of Ohio.  Beta is a corporate citizen of, and has its principal place of business in the State of Texas.  As the parties are diverse, and as State seeks damages in an amount greater than $75,000, the Court finds it may properly exercise subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

In addition to answering the Amended Complaint, Beta filed counterclaims of tortious interference with business contracts and employment relationship, and tortious interference with business and/or economic relationships and its prospective advantage, against State.  The counterclaims are based, in part, on allegations that State offered Hayden financial incentives and rewards in exchange for favorable testimony against Beta in this lawsuit, and to induce him to terminate his employment with Beta and resume his employment with State.

4

Beta has now moved for summary judgment on the claims alleged by State in the Amended Complaint, and State has moved for summary judgment on the counterclaims alleged by Beta.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of

5

material fact.  Celotex, 477 U.S. at 323.  The movant need not, however, support the motion with materials that negate the opponent's claim.  Id.  As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim.  Id. at 323-24.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980).  Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial.  National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

## III.  Legal Analysis

### A.  Motion of Beta for Summary Judgment

In its Amended Complaint, States alleges claims of conspiracy to breach contract, tortious interference with business contracts,

tortious interference with economic relations, misappropriation of confidential information, and violation of the Mississippi Trade Secret Statute. Beta has moved for summary judgment on each these claims arguing that it is barred by the applicable statute of limitations. The parties agree, as does the Court, that each of the above referenced claims is governed by a three-year statute of limitations. See MISS. CODE ANN. § 15-1-49(1) ("All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."); MISS. CODE ANN. § 75-26-13 ("An action [under the Mississippi Trade Secret Statute] for misappropriation must be brought within three (3) years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."). The issue before the Court is when did the claims alleged by State accrue for the purpose of starting the applicable statutes of limitations.

For nearly a century, the Mississippi Supreme Court has held that "[t]he statute of limitations begins to run, whenever the cause of action accrues. In other words, the time limited is to be computed from the day upon which the plaintiff might have commenced an action for the recovery of his demand." Central Trust Co. v. Meridian Light & Ry. Co., 63 So. 575, 576 (Miss. 1913). See also Commercial Servs. of Perry, Inc. v. F.D.I.C., 199 F.3d 778, 780 (5th Cir. 2000) ("[I]n Mississippi, the statute runs from the time

of the injury, not from its discovery."); <u>Owens-Illinois, Inc. v.</u>
<u>Edwards</u>, 573 So. 2d 704, 706 (Miss. 1990) ("A cause of action
accrues only when it comes into existence as an enforceable claim;
that is, when the right to sue becomes vested.").

In the case *sub judice*, the claims of conspiracy to breach
contract, tortious interference with business contracts, tortious
interference with economic relations, misappropriation of
confidential information, and violation of the Mississippi Trade
Secret Statute, as set forth by State in its Amended Complaint, are
all predicated on allegations that Beta conspired with or assisted
Hayden to continue to sell products to prior State customers that
he was prohibited from contacting by either the employment
agreement he entered while employed by State and/or the Consent
Orders previously entered by Judge Wingate, and that Beta sold
products to former State customers using confidential information
it received from Hayden.   See <u>e.g.</u> Amended Complaint, ¶ 24
(alleging, in support of conspiracy to breach contract claim, that
"Beta was aware of the Settlement Agreements and Releases, as well
as Hayden's Employment Contract and conspired with Hayden, and
others, to assist, direct, aid, and allow the breach of those
agreements for its own benefit"); ¶¶ 27, 28 (alleging, in support
of tortious interference with business contracts claim, that "Beta
was aware of the Settlement Agreements and Releases, as well as
Hayden's Employment Contract, yet Beta aided, assisted in and

allowed the breach and interference with those contracts for its own benefit ..." and that "Beta intentionally and willfully used and continues to use State's trade secrets and proprietary and confidential information to directly solicit customers and/or clients with whom State had contracts for business."); ¶ 31 (alleging, in support of tortious interference with advantageous economic relations claim, that "Beta intentionally and willfully used and continues to use State's trade secrets and proprietary and confidential information, in violation of the Consent Judgment and Order, the Settlement Agreement and Releases, and Hayden's Employment Contract, to directly solicit existing and/or potential customers and/or clients of State."); ¶¶ 34, 35 (alleging, in support of misappropriation of confidential information claim, that "[w]hile employed by State, Hayden received confidential customer information ..." and that "Beta obtained State's confidential and proprietary information from Hayden and has misappropriated, used, and continues to use the aforesaid confidential information to unfairly compete with State."); and ¶¶ 38-40 (alleging, in support of violation of Mississippi Trade Secret Statute claim, that "Hayden ... possessed during his employment at and continued to retain and utilize after his employment terminated, customer information ...", the "Consent Judgment and Order in the Hayden Suit, the Settlement Agreements and Releases and Hayden's Employment Contract provide that Hayden will not use or disclose

State's trade secrets ..." and "Beta conspired with Hayden, and others, and through Hayden and others used and disclosed State's trade secret information."). On the issue of when these claims accrued, Beta has presented evidence that in June of 2002, Hayden submitted a sales contract, that he had signed on behalf of Beta, to a customer he was barred from contacting under the subject Consent Orders and employment agreement. See Mot. of Beta for Summ. Jud. Ex. B (Hayden Dep. of Sept. 19, 2002), 15. Beta also submitted evidence that State knew that Hayden submitted the infringing sales contract on behalf of Beta not later than September, 19, 2002, when he provided his deposition testimony, see generally id., Ex. B, and that counsel for State explicitly recognized that Hayden had entered the infringing contract on behalf of Beta. Id., Ex. B, at 21-22 (counsel for State stating onto record that Hayden "also did have the contract entered into for Beta Technology."). The record also shows that on August 22, 2002, Thomas Schlesinger, an Area Sales Manager for State, visited another State customer that Hayden was prohibited from contacting and was shown current contracts for the sale of Beta products that had been entered by Hayden on behalf of Beta. See id. Ex. D (Schlesinger Dep.), exhibit 9 (Schlesinger Aff. signed Sept. 4, 2002, at ¶ 7). Beta has also presented evidence that State, through Schlesinger, knew in the Summer or Fall of 2002, that Hayden and Eric Pousson ("Pousson") were meeting with customers

10

that Hayden was barred from contacting under the subject Consent Orders and employment agreement, which "made it clear to [him] that Beta was in Mississippi by virtue of Gene Hayden."[2]  Id. Ex. D, at 85, 87.  Finally, the record shows that State had reason to believe that Hayden was misusing its confidential information and sharing that information with Beta in 2002.  Id. Ex. D, at 150.

In response to the Motion of Beta for Summary Judgment, State argues that its claims are governed by Mississippi Code Annotated Section 15-1-49(2), which provides: "In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury."  State further argues that under this statute, its claims did not accrue until June or July of 2006, when it discovered that Hayden had not complied with the Consent Order entered by Judge Wingate on September 30, 2002, and that Beta had formulated a plan to have other agents contract with the State customers Hayden was prohibited for contacting.  See Resp. to Mot. of Beta for Summ. Jud., Ex. O and T.  The Court finds that Section 15-1-49(2) is not applicable in this case.

First, discussing this statute, the Mississippi Supreme Court has expressly cautioned "that the discovery rule should only be

---

[2]  Schlesinger also testified that he knew Pousson was employed by Beta at the time he and Hayden were meeting with prohibited State customers.  Id., Ex. D, at 87.

applied in "limited circumstances in [ ] negligence and products liability case[s] involving latent injury."  See PPG Architectural Finishes, Inc. v. Lowery, 909 So. 2d 47, 50 (Miss. 2005) (citations omitted).  State has not cited to any cases in which the Mississippi appellate courts have extended the discovery rule to apply to claims of conspiracy to breach contract, tortious interference with business contracts, tortious interference with economic relations, or misappropriation of confidential information, as alleged in the Amended Complaint.  As the Court is bound to follow Mississippi law in this diversity case, and as the Mississippi Supreme Court has not applied the discovery rule in cases other than those involving negligence/products liability, the Court finds no basis for extending the discovery rule to cover the claims alleged by State in the case at bar.

Second, if the discovery rule were to apply in this case, under Mississippi law:

> A latent injury is defined as one where the "plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question ... [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act."

See Lowery, 909 So. 2d at 50 (citations omitted).  "For an injury to be latent it must be undiscoverable by reasonable methods."  Id. (citations omitted).  "Because there is no bright line rule, the specific facts of the case will determine whether the plaintiff knew or reasonable should have known that an injury existed."  Id. (citations omitted).

In the case *sub judice*, the Court finds there does not exist a genuine issue of material fact regarding whether this lawsuit involves a latent injury for the purpose of applying Section 15-1-49(2).   First, as noted above, for an injury to be considered latent, it must be undiscoverable by reasonable methods.  Although State has presented evidence that it did not know the full extent of Beta's participation in the alleged wrongful conduct until June or July of 2006, the record in this case clearly shows that State knew, as early as June of 2002, and not later than August 22, 2002, that Hayden, on behalf of Beta, was entering contracts for the sale of Beta products with State customers that he was prohibited from contacting under the subject Consent Orders and employment agreement.   As State already had knowledge of some of the wrongdoing alleged in this case, the Court finds that a genuine fact issue does not exist regarding whether the alleged wrongdoing was inherently undiscoverable, or whether State knew or reasonably should have known that the injuries about which it complains existed as early as 2002.  Second, the record shows that State was fully capable of discovering misappropriation and improper use of its confidential client information as evidenced by the lawsuit and subsequent motions for contempt it filed against Hayden.  As State has shown itself fully capable of determining that Hayden had misappropriated and misused confidential client information, the Court finds, based on the record before it, there does not exist a

genuine fact issue regarding whether it was precluded from discovering that Beta conspired with Hayden, or had independently misappropriated and misused that same information.

Third:

> When applying the discovery rule, "[t]he focus is upon the time that the plaintiff discovers, or should have discovered by the exercise of reasonable diligence, that [it] probably has an actionable injury." The would-be plaintiff need not have become absolutely certain that he had a cause of action; he need merely be on notice-or should be-that he should carefully investigate the materials that suggest that a cause probably or potentially exists. Neither need the plaintiff know with precision each detail of breach, causation, and damages, but merely enough to make a plain statement of the case backed by evidence sufficient to survive a summary judgment motion.

First Trust Nat'l Ass'n v. First Nat'l Bank of Commerce, 220 F.3d 331, 336-37 (5th Cir. 2000)(applying Mississippi law)(citations omitted). In addition to presenting evidence that State knew that Hayden, on behalf of Beta, was entering sales contracts with State customers that he was prohibited from contacting, Beta has presented evidence that in the Fall of 2002:

> State knew that Hayden was working for Beta, that he had previously violated his employment contract and Judge Wingate's June 27, 2002, Consent Order, and that Beta was now selling its products in Mississippi although it had no presence in this State until it employed Hayden;

> State knew that Hayden and Pousson, on behalf of Beta, had visited State customers Hayden was prohibited from contacting;

> State knew that it was unable to sell any products to some of its prior customers whose State account had been handled by Hayden, and had been "zeroed" in those accounts during the time period Hayden was employed by Beta, even after Judge Wingate entered the second Consent Order on September 30, 2002; and

> State suspected that Hayden, while employed by Beta, was
> selling products to State customers he was prohibited from
> contacting.

See Rebuttal to Mot. of Beta for Summ. Jud., at 4-6 (citations to

record omitted).  Based on the record before it, the Court finds

there does not exist a genuine issue of material fact with regard

to whether State was on notice, or should have been on notice, that

Beta, through Hayden, was misusing its confidential customer

information in the Fall of 2002, thereby suggesting the existence

of a probable or potential cause of action warranting further

investigation.  Thus, the Court additionally finds there does not

exist a genuine issue of material fact with regard to whether, in

the exercise of due diligence, State would or should have

discovered the alleged wrongful conduct by Beta at that time.

For the reasons discussed above, the Court finds that State

has failed to establish that the discovery rule, codified at

Mississippi Code Annotated Section 15-1-49(2), is applicable in

this case.  The Court additionally finds that State has failed to

establish a genuine issue of material fact as to whether its claims

of conspiracy to breach contract, tortious interference with

business contracts, tortious interference with economic relations,

misappropriation of confidential information, and violation of the

Mississippi Trade Secret Statute, accrued after 2002.  Although a

specific date cannot be determined from the record before it, the

Court finds that the above referenced claims accrued, for the

purpose of beginning the applicable limitations period not later than December 31, 2002.[3]  As State did not file the subject lawsuit against Beta until February 8, 2007, the Court finds that its claims of conspiracy to breach contract, tortious interference with business contracts, tortious interference with economic relations, misappropriation of confidential information, and violation of the Mississippi Trade Secret Statute are all barred by the applicable three-year statute of limitations and, therefore, Beta is entitled to summary judgment on these claims.

Beta has also moved for summary judgment on the contempt claim alleged by State in its Amended Complaint on the basis that it is time-barred.  On the issue of civil contempt, the United States Court of Appeals for the Fifth Circuit has recognized that "[a] movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with

---

[3]  As discussed above, a misappropriation claims under the Mississippi Trade Secret Statute "must be brought within three (3) years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." See MISS. CODE ANN. § 75-26-13.  The record shows that State had reason to believe that Hayden and Beta had misappropriated its confidential customer information in 2002.  See Mot. of Beta for Summ. Jud., Ex. D., at 150.  Based on this testimony, the Court finds there does not exist a genuine issue of material fact with regard to whether State discovered or should have discovered its claims arising under the Mississippi Trade Secret Statute on or before December 31, 2002.

the court's order."  Test Masters Educ. Servs., Inc. v. Singh, 428
F.3d 559, 581–82 (5th Cir. 2005).  In the case *sub judice*, there is
no evidence that the prior Consent Orders entered by Judge Wingate
required any conduct on the part of Beta, which was not a party to
the lawsuit in which those Orders were entered.  As Beta was not
required to do, or refrain from doing anything under the subject
Consent Orders, there can be no finding that Beta failed to comply
with those Orders.  Accordingly, the Court finds that Beta cannot
be held in civil contempt of either the June 27, 2002, or the
September 30, 2002, Consent Orders entered by Judge Wingate, and
additionally finds that Beta is entitled to summary judgment on the
civil contempt claim for that reason.

Finally, Beta has moved for summary judgment on the spoilation
of evidence claim alleged by State in its Amended Complaint on the
basis that Mississippi does not recognize that cause of action.
See Dowdle Butane Gas Co., Inc. v. Moore, 831 So. 2d 1124, 1135
(Miss. 2002) (refusing "to recognize a separate tort for
intentional spoliation of evidence against both first and third
party spoliators.").  In response, State has indicated that it does
not seek separate damages on its claim for spoilation of evidence,
but merely raised the issue in its Amended Complaint to preserve
the right to request an evidentiary ruling at trial.  See Mem. of
State in Supp. of Resp. to Mot. of Beta for Sum. Jud., 21.  As
State does not intend to seek damages on its claim of spoilation of

evidence, the Court finds that Beta is entitled to summary judgment on this claim.

In sum, and for the reasons discussed above, the Court finds that Beta is entitled to summary judgment on all of the claims alleged by State in its Amended Complaint and, therefore, that all of these claims should be dismissed with prejudice.

## B.  Motion of State for Summary Judgment

In addition to answering the Amended Complaint, Beta filed counterclaims of tortious interference with business contracts and employment relations, and tortious interference with business and/or economic relationships and its prospective advantage against State.  These claims are predicated on allegations that State offered Hayden a "financial benefit" in exchange for changing his sworn testimony, assuming an adverse position against Beta, and terminating his employment relationship with Beta, thereby wrongfully interfering with the employment relationship between Beta Hayden and preventing Hayden from conducting legitimate business its behalf; and that State interfered with Beta's business contracts and relationships with its customers by pursuing unmeritorious, frivolous and/or insupportable claims against Hayden and offering to drop those claims in exchange for a financial reward to him, and to harm it. See Answer and Counterclaims [Docket No. 5], at ¶¶ 10-11, 14-15.

18

The Mississippi Supreme Court has recognized "a distinction between claims of tortious interference with performance of a contract and claims of tortious interference with business relations, which is also referred to as interference with prospective advantage.

> Fundamentally, it is one thing for a wrongdoer to cause another to breach a contract which he or she has with some third person. This is tortious interference with performance of a contract. Yet, it is quite another thing when a wrongdoer unlawfully diverts prospective customers away from one's business thereby "encouraging" customers to trade with another. This is tortious interference with business relations or sometimes referred to as interference with prospective advantage...

Cenac v. Murry, 609 So. 2d 1257, 1268 (Miss. 1992).

In support of its motion, State argues that it is entitled to summary judgment on the tortious interference claims because there is no evidence that it interfered with any contractual rights between Beta and its customers. Beta has not presented any evidence or argument in response to this claim. Instead, Beta argues that State has misconstrued it claims in that it alleges that "State intentionally and willfully interfered with Beta's employment relationship with Hayden" and, therefore, "State's reliance on evidence that Beta did not lose any written contracts is misplaced." See Mem. in Supp. of Resp. to Mot. of State for Summ. Jud., 9; Id., at 9-10 (arguing "The primary contract at issue is Hayden's employment contract, not customer contracts."). As Beta concedes that its tortious interference claims arise solely

from the alleged interference with Hayden's employment contract, and not with its customers, and as there is no evidence that State interfered with any contract between Beta and its customers, the Court finds that State is entitled to summary judgment on the tortious interference of contract claim to the extent that claim is predicated on allegations that "State interfered with Beta's business contracts and relationships with its customers."  See Counterclaim, at ¶ 10.  Additionally, for the same reasons, the Court finds that State is entitled to summary judgment on the claim of tortious interference with business and/or economic relationships and its prospective advantage claim. See Progressive Cas. Ins. v. All Care, Inc., 914 So. 2d 214, 218-19 (Miss. Ct. App. 2005) (finding that "[t]ortious interference with a business relationship occurs when 'a wrongdoer unlawfully diverts prospective customers away from one's business, thereby encouraging customers to trade with another.'") (citing Cenac, 609 So. 2d at 1268)).

The Court next considers the claim that State tortiously interfered with Hayden's employment contract with Beta.  Under the tort of tortious interference with contract:

> One who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Cenac, 609 So. 2d at 1268 (quoting Liston v. Home Ins. Co., 659 F.

20

Supp. 276, 280 (S.D. Miss. 1986)).  See also id. (quoting Mid-Continent Tel. Corp. v. Home Tel. Co., 319 F. Supp. 1176, 1199-1200 (N.D. Miss. 1970)):

> An action for interference with contract will ordinarily lie when a defendant maliciously interferes with a valid and enforceable contract, thereby causing one party not to perform and resulting in injury to the other contracting party.  Malice in this context is the intentional doing of a harmful act without justification or excuse, or stated differently, the wilful violation of a known right.

To recover on a claim of tortious interference with contract, the plaintiff must prove: (1) that the defendant's acts were intentional and willful; (2) they were calculated to cause damage to the plaintiff in its lawful business; (3) they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual damage and loss resulted.  Id. at 1268-69 (citations omitted).  In addition, "the plaintiff must prove that an enforceable obligation existed between the plaintiff and another party", and that "the contract would have been performed but for the alleged interference."  Par Indus., Inc. v. Target Container Co., 708 So. 2d 44, 48 (Miss. 1998) (citations omitted).

In support of its tortious interference with contract claim, Beta alleges:

> State intentionally and wilfully interfered with Beta's contractual employment relationship with Hayden by offering to dismiss a lawsuit in exchange for, among other things, changing his sworn testimony, taking actions adverse to Beta, and terminating his employment

relationship with Beta.  In other words, by using the
court system and litigation to accomplish that which it
would not otherwise accomplish, forcing Hayden to quit
his job and return to work for State.  As such, State's
pursuit of Hayden and subsequent and repeated offers to
drop its claims against Hayden and provide a financial
reward a financial reward to Hayden demonstrates State's
abuse of the legal process to achieve a business goal.
State has essentially used the court as a way to leverage
its former employee to rejoining it – against his will –
and is indicative of the lack of credibility in State's
pursuit of its claims here and against Hayden.

See Mem. in Supp. of Resp. to Mot. of State for Summ. Jud., 9.  In

support of these allegations, Beta has presented evidence that the

State filed its second motion for contempt against Hayden two days

after Beta refused to sell its operations to State; State

thereafter offered to dismiss the contempt charges in the event he

returned to its employ; Hayden was offered $41,000 (a $25,000

signing bonus and $16,000 in advances during his first two months

of employment) in exchange for returning to work for State and

verifying documents (that are material to this lawsuit) related to

the sales he made while employed by Beta; Hayden ultimately agreed

to settle the contempt claim and return to work for State; and

Hayden took with him the account of at least one unrestricted

customer to which he had previously sold Beta products.  See, id.

at 3-6 (citations to record omitted).

    The Court finds, accepting this evidence as true, that it does

not create a genuine issue of material fact with regard to whether

the actions of State "were calculated to cause damage to the

plaintiff in its lawful business" or "done with the unlawful

purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice)." Although, Beta argues that State filed the contempt charges against Hayden for the purpose of having him return to work for that company in exchange for settling the contempt charge, the record shows that State was justified in filing that action based on Judge Wingate's ultimate finding that Hayden was indeed in contempt of his prior Consent Orders. See Mot. of State for Summ. Jud., Ex. P (Contempt Hr'g Tr.), 52. As regards the financial incentives paid to Hayden in exchange for his agreement to return to work for State, the Mississippi Court of Appeals has found that "conduct related to a legitimate, employment-related objective constitutes justifiable acts, which cannot 'give rise to an inference of malice'" for the purpose of maintaining a tortious interference with contract claim. Here, the record shows that State desired to re-employ Hayden because of his abilities as a salesman and to attempt to revive its commercial relationship with its former clients whose accounts had been serviced by Hayden. See Mot. for Summ. Jud., Ex. A (Schlesinger Aff.), at ¶¶ 9 and 10. As such, it does not appear that State sought to re-employee Hayden for the specific purpose of causing loss and/or damage to State. Finally, there is no evidence that State offered financial incentives to Hayden for the purpose of changing his sworn testimony and/or assuming a position adverse to Beta in the subject lawsuit. On

23

this issue, Beta has produced a letter from John Kitchens ("Kitchens"), the attorney who represented Hayden in the underlying lawsuit filed against him by State, which provides, in relevant part:

> Pursuant to your first offer on January 31, 2007, State Industrial sought [Hayden's] cooperation and "honest" testimony regarding his employment and sales with Beta Technology. In return, you offered to pay [Hayden's] attorney's fees and limit his damages.

See Mot. for Summ. Jud., Ex. B (Kitchens Aff.) at ex. A. Without deciding the issue, if this document is admissible evidence, at best it shows that Hayden agreed, as part of settling the contempt charges, to cooperate with State and provide honest testimony. The Court finds this document does not establish that State offered financial incentives to Hayden for the purpose of changing his sworn testimony. Additionally, the record shows that Hayden was not offered such incentives for that purpose. See id. Ex. B (Kitchens Aff.) at ¶ 13 (averring: "State did not offer financial benefit to Hayden in exchange for a change in Hayden's sworn testimony."); id., Ex. G (Hayden Dep. of Feb. 13, 2008), at 55–56 (Hayden testifying that no one ever asked him to change his testimony, and that only his attorney, his wife, and his pastor instructed him to testify honestly in these proceedings).[4]

---

[4] The record also shows that while Hayden used the signing bonus he received to pay some of the attorneys fees he incurred in the lawsuit filed against him by State, that he still owes approximately $19,000 in attorneys fees, and that State did not promise any other bonuses to help him cover those costs. See id., Ex. G (Hayden Dep. of Feb. 13, 2008), at 54.

Based on evidence before it, the Court finds there does not exist a genuine issue of material fact with regard to whether the actions of State "were calculated to cause damage to the plaintiff in its lawful business" or "done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice)."  The Court additionally finds that there does not exist a genuine issue of material fact with regard to whether State tortiously interfered with the employment contract between Beta and Hayden thereby improperly preventing the latter from conducting business on behalf of Beta.  Accordingly, the Court finds that State is entitled to summary judgment on the tortious interference claims alleged by Beta in this case.

Through its counterclaim, Beta has also requested a declaratory judgment that it did not violate the prior Consent Orders entered by Judge Wingate.  See Answer and Counterclaim, ¶ 18.  State moves for summary judgment on the declaratory judgment claim on the bases that it is redundant and moot.  The Court finds that as there is an identity of factual and legal issues between the claim of State for contempt of consent judgment and order and the declaratory judgment sought by Beta, the claim of State renders the latter redundant and moot upon disposition of that claim. See e.g. Resolution Trust Corp. v. Ryan, 801 F. Supp. 1545, 1556 (S.D. Miss. 1992) (finding, in a case in which there was an identity of

factual and legal issues between the plaintiff's claims and the defendants' counterclaims for a declaratory judgment, that the plaintiff's claims rendered the defendants' counterclaims redundant and moot upon disposition of the claims against defendants) (citation omitted).  Accordingly, the Court finds that State is entitled to summary judgment on the declaratory judgment claim.

### IV.   Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant Beta Technologies, Inc., for Summary Judgment on the claims alleged in the Amended Complaint [Docket No. 46] is hereby granted.

IT IS FURTHER ORDERED that the Motion and Supplemental Motion of Plaintiff State Industrial Products Corporation for Summary Judgment on the claims alleged in the Counterclaim [Docket Nos. 43 & 50] are hereby granted.

IT IS FURTHER ORDERED that the Motion and Amended Motion in Limine of Plaintiff State Industrial Products Corporation [Docket Nos. 71 & 73] are hereby dismissed as moot.

A Final Judgment dismissing this case with prejudice will be entered by a separate order as required by Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this the 17th day of June, 2008.


s/William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE